**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 19, 2016

The Honorable Alison J. Nathan
United States District Judge
United States District Court for the
   Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    <u>**United States of America** v. **Jonathan Anderson**</u>
              **15 Cr. 074 (AJN)**

Dear Judge Nathan:

      The Government writes in advance of the sentencing of Jonathan Anderson, the defendant, which is currently scheduled for January 21, 2016 at 3:00 p.m. The Government respectfully submits that a sentence within the advisory Guidelines range would be sufficient, but not greater than necessary, to comply with the purposes of sentencing.

      On May 14, 2015, the defendant pled guilty to participating in a conspiracy to commit bank fraud in violation of Title 18, United States Code, Section 1349. The defendant's stipulated Guidelines range is 37 to 46 months' imprisonment. The Government respectfully submits that a sentence falling within the advisory Guidelines range is appropriate given the nature and circumstances of the defendant's conduct and the defendant's history and characteristics.

    A.  <u>Factual Background</u>

      From at least in or about 2011 up to and including in or about June 2012, Jonathan Anderson, the defendant, and his co-conspirators participated in a bank fraud scheme. Specifically, Anderson and his co-conspirators opened bank accounts in the name of, and in names similar to, a digital advertising firm located in Manhattan, New York called Undertone. Neither Anderson nor his co-conspirators were authorized to open bank accounts on behalf of Undertone. After opening these accounts, Anderson and his co-conspirators deposited checks they had obtained that were intended for Undertone into the accounts and then withdrew the proceeds of the checks deposited. Anderson's role in the scheme was that of the supplier. He supplied his co-conspirators with the Undertone checks they fraudulently cashed. In exchange for supplying his co-conspirators with the checks, Anderson typically received half of the

proceeds derived from those checks.  In total, Anderson supplied his co-conspirators with approximately 27 Undertone checks worth approximately $711,589.31 in total.

On July 9, 2015, one of Anderson's co-defendants, James Robinson, was convicted after a jury trial before the Honorable Shira A. Scheindlin.  The evidence at trial demonstrated that Robinson received approximately 10 Undertone checks from Jonathan Anderson worth over $229,000.  Eight witnesses testified for the Government at trial, including a cooperating witness named Kenneth Nadolny.  Nadolny provided extensive testimony regarding Robinson and his co-conspirators' participation in the scheme, including that of Jonathan Anderson.  The Government also introduced copies of the stolen Undertone checks and phone records.  The phone records showed that Robinson and Anderson were in constant contact with members of the conspiracy during the course of the scheme.

    B.  Applicable Law

The advisory Sentencing Guidelines promote the "basic aim" of Congress in enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways." *United States* v. *Booker*, 543 U.S. 220, 252 (2005).  Thus, the Guidelines are more than "a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge." *United States* v. *Crosby*, 397 F.3d 103, 113 (2d Cir. 2005).  The applicable Sentencing Guidelines range "will be a benchmark or a point of reference or departure" when considering a particular sentence to impose. *United States* v. *Rubenstein*, 403 F.3d 93, 98-99 (2d Cir. 2005).  In furtherance of that goal, a sentencing court is required to "consider the Guidelines sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant, the pertinent Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims." *Booker*, 543 U.S. at 259-60 (citations omitted).

Along with the Guidelines, the other factors set forth in Section 3553(a) must be considered.  Section 3553(a) directs the Court to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes set forth in paragraph two.  That sub-paragraph sets forth the purposes as:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training,

    medical care, or other correctional treatment in the most effective manner.
    . . .

18 U.S.C. § 3553.

  Section 3553(a) further directs the Court "in determining the particular sentence to impose" to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. See 18 U.S.C. § 3553(a).

  The Second Circuit has instructed that district courts should engage in a three-step sentencing procedure. *See Crosby*, 397 F.3d at 103. First, the Court must determine the applicable Sentencing Guidelines range, and in so doing, "the sentencing judge will be entitled to find all of the facts that the Guidelines make relevant to the determination of a Guidelines sentence and all of the facts relevant to the determination of a non-Guidelines sentence." *Crosby*, 397 F.3d at 112. Second, the Court must consider whether a departure from that Guidelines range is appropriate. *Id.* Third, the Court must consider the Guidelines range, "along with all of the factors listed in section 3553(a)," and determine the sentence to impose, whether it be a Guidelines or non-Guidelines sentence. *Id.* at 113. In so doing, it is entirely proper for a judge to take into consideration his or her "own sense of what is a fair and just sentence under all the circumstances." *United States* v. *Jones*, 460 F.3d 191, 195 (2d Cir. 2006).

 C. <u>Discussion</u>

  A sentence falling within the advisory Guidelines range is appropriate given the nature and circumstances of the defendant's conduct. As stated earlier, the defendant was responsible for providing his co-conspirators with nearly one million dollars in stolen Undertone checks. His co-conspirators then converted those checks and gave Anderson a portion of the check proceeds. Thus, at least in regards to his co-defendants, the scheme began and ended with the defendant. However, despite the defendant's obviously critical role in the scheme, he argues that he was not the leader of the charged scheme. Instead, defendant argues, his co-defendant, James Robinson, was the leader of the charged conspiracy. (Def.'s Br. 7). This is patently false. The evidence presented at trial overwhelmingly established that Anderson was a leader in the charged conspiracy. Indeed, the Government's cooperating witness, Kenneth Nadolny, testified that, "Well, Jonathan Anderson had a street name of Knowledge. He was the one at the end of the game who delievered me all the checks and I would meet and give him back 50 percent in cash." (Tr. 53). He went on to state plainly, "[Anderson] was the distributor of the checks." (Tr. 98) In regards to James Robinson's role in the scheme compared to that of Anderson's, Nadolny stated,

3

"Mr. Robinson would get the checks from [Anderson].  He would give them to Ken Foote.[1]  Ken Foote would go to the bank and deposit them."  (Tr. 60).   Nadolny also testified about an instance in which he gave Anderson "20,000 in cash," (Tr. 54), another instance in which was "trying to put 50,000 cash together for [Anderson]" (Tr. 112), and how he was generally paying Anderson "over 10,000 a week."  (Tr. 137).  Thus, for the defendant to claim that he was not a leader in the charged scheme defies credulity.

A Guidelines sentence is also appropriate given the defendant's history and characteristics.  After the charged conspiracy ended, Anderson immediately formed another conspiracy involving stolen checks.  Nadolny testified at trial that one day "Mr. Anderson called [him] to tell [him] that everyone at Undertone had been taken in and arrested . . . and that the business was shut down."  (Tr. 138).  The defendant proceeded to tell Nadolny, however, not to worry because he "got something real big going now."  (Tr. 138).   Anderson then gave Nadolny checks intended for a company named MPS Global Securities.  (Tr. 138-139).  MPS Global Securities was located in the same office building as Undertone.  (Tr. 142).  Nadolny deposited those checks and gave the proceeds, "[u]sually about two-thirds in cash," to Anderson.  (Tr. 140).

Accordingly, given the nature and circumstances of the defendant's conduct, and the defendant's history and characteristics, the Government respectfully requests that a sentence falling within the advisory Guidelines range of 37 to 46 months' imprisonment be imposed.

        Sincerely,

        PREET BHARARA
        United States Attorney

        By:_____/s/_____
cc:    David K. Bertan, Esq.        Robert L. Boone
        Assistant United States Attorney
        Southern District of New York
        (212) 637-2208

---

[1] Kenneth Foote was an associate of James Robinson.  (Tr. 325).